IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TREY LOGAN DAVIS, | § | |
| TDCJ #1353193, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-2381 |
| | § | |
| SHERIFF CHRIS KIRK, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

State inmate Trey Logan Davis has filed this action under 42 U.S.C. § 1983, alleging violations of his civil rights while he was in custody at a local county facility. Davis, who proceeds *pro se* and *in forma pauperis*, has submitted a memorandum in support of his complaint. (Doc. # 1). Defendants Chris Kirk and Pauline Alonzo have filed a motion to dismiss or, in the alternative, for summary judgment. (Doc. # 15). Defendant Rany Cherian has also filed a motion to dismiss or, in the alternative, for summary judgment. (Doc. # 16). Davis has not filed a response to the defendants' motions. Davis has, however, filed more than one request for appointment of counsel. (Docs. # 13, # 17). For reasons that follow, all of the pending motions are denied at this time.

## I.   BACKGROUND

Davis is currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"), at the Price Daniel Unit in Snyder, Texas. Davis's complaint, however, concerns the conditions of his confinement at the Brazos County Jail, where he was in custody from January 23, 2004 through March 13,

2006, before his criminal conviction and transfer to state prison.  Public records reflect that Davis was arrested in 2004, along with his older brother, and charged in connection with a "drug-related" murder in Brazos County.[1]  *See Ex parte Davis*, 147 S.W.3d 546 (Tex. App. — Waco 2004, no pet.).  In 2006, Davis pled guilty in the 85th District Court of Brazos County, Texas, to charges of robbery and burglary of a habitation.  *See Davis v. State*, 205 S.W.3d 606 (Tex. App. — Waco 2006, no pet.).  Pursuant to the terms of a negotiated plea agreement, Davis received consecutive terms of twenty years' imprisonment in each of those cases.  *See id*.

Davis sues Brazos County Sheriff Chris Kirk and two health care providers assigned to work with inmates at the Brazos County Jail, Sergeant Pauline Alonzo and Dr. Rany Cherian.  Sergeant Alonzo is employed by the Brazos County Sheriff's Department as Director of Nurses for the Jail.  Dr. Cherian is an independent contractor employed by Brazos County.  As detailed further below, Davis's complaint primarily concerns an alleged denial of medical care in the form of surgery for an unspecified arm injury.

Davis explains that, at the time of his initial arrest and placement in custody at the Brazos County Jail, he had previously suffered a broken arm as the result of an auto accident. Davis concedes that he received treatment for his arm while at the Jail, including a referral to an orthopedic specialist.  Davis does not provide any specific details about his injury or

---

[1]     The charges apparently involved allegations of solicitation or murder-for-hire, which is a capital offense in Texas.  *See Police Arrest 2 Brothers in College Station Death*, HOUS. CHRON. Jan. 25, 2004, at A34.  Prison records show that Trey Davis's older brother, Chad Fenley Davis (TDCJ #1336883), was convicted of capital murder in that case and sentenced to life imprisonment in 2005.

his symptoms, and there are no medical records available from which to determine the nature of his medical problem.  According to Davis, however, he was examined by a specialist at the Central Texas Sports Medicine and Orthopedic Clinic (Dr. Rick Seabolt), who recommended immediate surgery for undisclosed reasons.  This specialist allegedly warned Davis that, if surgery was not performed in "a very short time," his arm "would have to be amputated."  Davis claims that he requested surgery at the Brazos County Jail, but that Dr. Cherian would not authorize the procedure.

Davis alleges that, without the recommended surgery, his arm caused him "constant pain."  Davis contends that he filed numerous "sick call requests" and grievances concerning his arm, but that Sheriff Kirk responded by removing him from the hospital tank and into general population in retaliation for his requests.  While assigned to the general population, Davis reports that he injured his arm again in October 2004, during an "altercation" with another prisoner.  Davis was taken to the hospital, where X-rays were taken of his injured arm.  At the hospital, an unidentified attending physician reportedly recommended surgery.  According to Davis, however, Dr. Cherian once again refused to authorize the procedure.

After he re-injured his arm in October of 2004, Davis remained in the Jail's general population.  Davis claims that he was in "extreme pain" as a result of his injured arm and that he filed numerous grievances requesting surgery.  Davis alleges that the nursing staff, supervised by Sergeant Alonzo, refused to authorize an additional examination by a physician, stating that Davis had "already been seen and was not going to be treated [further]."  Although Davis requested "pain management," he was given only "over the

counter medications, such as tylenol."

By withholding medical care in the form of surgery, Davis contends that the defendants in this case formed a conspiracy with unidentified prosecutors to coerce his guilty plea to the criminal charges pending against him. Davis, who was facing murder charges, complains that a Brazos County District Attorney approached him about pleading guilty and promised that he would "get help for his injury" if he signed a plea agreement. This District Attorney also reportedly told Davis that, if he would agree to plead guilty, the State would dismiss murder charges that had been filed against Davis's father. Initially, Davis refused the offered plea bargain. After enduring approximately two years of "torture" at the Jail, Davis states that he finally agreed to plead guilty to charges of robbery and burglary. Davis insists that he signed the plea agreement under duress "so that he could receive medical care and so that the prosecutor would leave his father alone as he had promised." After signing the plea agreement, however, Davis complains that he was not afforded the requested medical care, namely, surgery for his arm. Moreover, contrary to his understanding of the plea agreement, Davis claims that his father was arrested and charged with capital murder.

Davis alleges that, by denying him medical treatment in the form of surgery, the defendants violated his constitutional rights under the Eighth Amendment, as well as various international human rights provisions and the Americans with Disabilities Act. Davis contends further that Sheriff Kirk retaliated against him, presumably in violation of his First Amendment right to file grievances, by housing him in the general population. Davis also appears to allege that his criminal conviction violates the Fourteenth Amendment's Due

Process Clause because his guilty plea was coerced.

Davis seeks compensatory and punitive damages.  He also seeks a declaratory judgment and injunctive relief in the form of surgery for his arm.  Davis further appears to seek relief from the guilty plea that resulted in his conviction.  After reviewing all of the pleadings as required by 28 U.S.C. § 1915A, the Court authorized service of process for the only individuals named in the complaint: Sheriff Kirk, Sergeant Alonzo, and Dr. Cherian. Sheriff Kirk and Sergeant Alonzo have filed a joint motion to dismiss or, in the alternative, for summary judgment, arguing that Davis's allegations fail as a matter of law.  Dr. Cherian has filed a similar motion to dismiss that includes an alternative motion for summary judgment.  The defendants' motions are addressed briefly below along with the plaintiff's motion for appointment of counsel.

## II.   STANDARDS OF REVIEW

### A.   Motions to Dismiss

The defendants have filed motions to dismiss, which are governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure and are appropriate only when a complaint fails to state a legally cognizable claim.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom. Cloud v. United States*, 536 U.S. 960 (2002).  A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*, 103 S. Ct. 729 (1983)).  A complaint should not be dismissed for failure to state a claim "unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Properly used, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Ramming*, 281 F.3d at 161 (citing *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992)).  In determining whether the plaintiff has stated a claim upon which relief can be granted, a reviewing court must accept the well-pleaded facts alleged in the complaint as true and construe the allegations in the light most favorable to the plaintiff. *See Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).  "At the same time, the plaintiffs must plead specific facts, not mere conclusional allegations, to avoid dismissal for failure to state a claim." *Milofsky v. American Airlines, Inc.*, 404 F.3d 338, 341 (5th Cir. 2005) (quoting *Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003)).  Therefore, a reviewing court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin*, 407 F.3d at 696 (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

**B.    Summary Judgment**

The defendants have also filed alternative motions for summary judgment, which are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R.

Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The moving party bears the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Capitol Indem. Corp. v. United States*, 452 F.3d 428, 430 (5th Cir. 2006).

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The nonmovant cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted).  Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party.  *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). Where the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact can exist. *Celotex*, 477 U.S. at 322-23; *Whiting v. University of Southern Miss.*, 451 F.3d 339, 345 (5th Cir. 2006).

As noted previously, the plaintiff proceeds *pro se* in this case.  A prisoner's *pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys and are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Alexander v. Ware*, 714 F.2d

416, 419 (5th Cir. 1983).  The plaintiff has not filed a substantive response to the defendants'

motions, although he has filed more than one motion for appointment of counsel.  (Docs.

# 13, # 17). Notwithstanding any failure to respond on the plaintiff's part, summary

judgment may not be awarded by default.  *See Hibernia Nat'l Bank v. Administration Cent.*

*Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).  "A motion for summary judgment

cannot be granted simply because there is no opposition, even if failure to oppose violated

a local rule."  *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (citing

*Hibernia Nat'l Bank*, 776 F.2d at 1279).  In that regard, the movant has the burden of

establishing the absence of a genuine issue of material fact and, unless he has done so, the

reviewing court may not grant the motion regardless of whether any response was filed.  *See*

*Hetzel*, 50 F.3d at 362 n.3.

## III.   <u>DISCUSSION</u>

At the outset, all of the defendants assert that the complaint must be dismissed

pursuant to the Prison Litigation Reform Act (the "PLRA"), codified as amended at 42

U.S.C. § 1997e(a), because Davis failed to exhaust his administrative remedies before filing

suit.  Alternatively, the defendants argue that Davis's claims fail as a matter of law for other

reasons.  Sheriff Kirk and Sergeant Alonzo maintain that Davis has failed to articulate a valid

claim against them in their official capacity under any theory lodged in the complaint.  Dr.

Cherian denies that she is a state actor or that Davis has a stated a valid civil rights claim

against her.  In addition, each of the defendants contend that they are entitled to qualified

immunity from Davis's substantive claims.  Because the exhaustion issue is potentially

dispositive, the Court begins its review of the claims and defenses with an examination of whether Davis satisfied this requirement.

**A.    Exhaustion of Administrative Remedies**

The defendants maintain that the complaint must be dismissed because Davis did not comply with grievance procedures available to inmates at the Brazos County Jail and that he therefore failed to exhaust his administrative remedies prior to filing this action in federal court.  This suit is governed by the PLRA, which prohibits any action by a prisoner in federal court under 42 U.S.C. § 1983 concerning "prison conditions" until "such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has repeatedly emphasized that § 1997e(a) mandates exhaustion of *all* administrative procedures before an inmate can file any suit challenging prison conditions.  *See Booth v. Churner*, 532 U.S. 731, 739 (2001); *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Woodford v. Ngo*, — U.S. —, 126 S. Ct. 2378, 2382-83 (2006).  Consistent with this Supreme Court precedent, the Fifth Circuit has also mandated that a prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions.  *See Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

The defendants have presented a copy of the Brazos County Inmate Grievance Plan, which details a formal three-step procedure for exhausting administrative complaints about the conditions of confinement at the Jail.  (Doc. # 15, Exhibit 3, Inmate Grievance Plan).  A review of the grievance procedure shows that it contemplates an initial written grievance by the inmate which, if denied or resolved in a manner that is unacceptable to the inmate,

must be challenged on appeal to the Jail Administrator.  If an appeal to the Jail Administrator is unsuccessful, the inmate must then complete a final appeal to the Sheriff.

Davis alleges in his complaint and supporting memorandum that he exhausted all available administrative remedies in place at the Jail by filing numerous grievances about his complaints of pain and his request for surgery.  Davis does not provide specific allegations about whether he appealed an adverse result from any of these grievances.  Likewise, Davis does not allege that he filed any grievance regarding his housing assignment in the general population, his claim of retaliation, or his allegations of a conspiracy.  This raises a question of fact about whether Davis exhausted his administrative remedies by complying with available grievance procedures in compliance with 42 U.S.C. § 1997e(a).

The defendants concede that Davis filed many grievances, but note that he "wholly failed to appeal any decision regarding a grievance."  The defendants argue, therefore, that Davis failed to complete the grievance process in place at the Jail and that he did not exhaust his remedies.  The defendants' arguments, however, rest solely on assertions made by counsel.  They have not presented any record of the grievances filed by Davis.  Likewise, there is no affidavit from anyone at the Jail who reviewed the grievances filed by Davis and the actions taken, if any, by Jail personnel.  The defendants simply insist that, because Davis does not allege that he pursued an appeal from any of his grievances, he has failed to satisfy his burden to demonstrate that he satisfied the exhaustion requirement before filing suit.  This argument is misplaced in light of recent authority from the United States Supreme Court.

Since the defendants filed their dispositive motions in this case, the Supreme Court has issued a decision which clarifies that a prisoner's failure to exhaust administrative remedies is an affirmative defense. *See Jones v. Bock*, — U.S. —, 127 S. Ct. 910 (2007). According to the decision in this case, a prisoner must still satisfy the exhaustion requirement found in 42 U.S.C. § 1997e(a), but he is not required to specifically plead or demonstrate exhaustion in his complaint. *See id*. at 919. Thus, the burden of proof on the issue of exhaustion rests with the defendants. The defendants have not met that burden. Accordingly, the defendants' motions to dismiss and/or for summary judgment on the issue of exhaustion must be denied at this time.

Exhaustion remains an issue that must be determined before the Court can review the merits of the plaintiff's claims and the remaining defenses raised by the defendants. So that the issue of exhaustion can be resolved in light of the above-referenced Supreme Court decision in *Jones*, the defendants are directed to file properly supported supplemental summary judgment motions on the issue of exhaustion or explain in writing why they are unable to do so. The Court will defer ruling on the remaining issues raised by the defendants until after it has considered this supplemental information.

**B.     Plaintiff's Request for Appointment of Counsel**

Davis has filed more than one motion for appointment of counsel. (Doc. # 4, # 13, # 17). A civil rights plaintiff has no automatic right to the appointment of counsel. *See Hulsey v. State of Texas*, 929 F.2d 168, 172-73 (5th Cir. 1991) (citing *Freeze v. Griffith*, 849 F.2d 172, 175 (5th Cir. 1988); *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982)). The

appointment of counsel is not required unless a case presents exceptional circumstances. *See Hulsey*, 929 F.2d at 173 (citing *Ulmer*, 691 F.2d at 212-13).    Factors relevant to that decision include: (1) the type and complexity of the case; (2) the indigent litigant's ability to present and investigate his case; (3) the presence of evidence which consists of conflicting testimony so as to require skill in the presentation of evidence and in cross-examination; and (4) the likelihood that appointment of counsel will benefit the indigent, the court, and the defendants by shortening the trial and assisting in just determination. *Parker v. Carpenter*, 978 F.2d 190, 193 (5th Cir. 1992) (citation omitted).

As grounds for appointment of counsel, Davis points to his status as an indigent inmate who is uneducated in the law.  He further argues that the case is complex in nature and will benefit from the appointment of counsel.  The threshold issue raised by the defendants, however, is not complex.  As outlined above, each of the defendants' pending motions assert that Davis failed to exhaust all three steps of the formal grievance procedure in place at the Jail by completing the requisite appeals.  Until the issue of exhaustion is resolved, it is uncertain whether the Court needs to reach the merits of the plaintiff's claims. Therefore, until the exhaustion issue has been decided, the Court cannot determine whether this case presents exceptional circumstances that warrant the appointment of counsel.  The Court will reconsider whether appointment of counsel is necessary, however, once it has an opportunity to review supplements by the defendants on the issue of exhaustion.

## IV.    **CONCLUSION AND ORDER**

Accordingly, based on the foregoing, the Court **ORDERS** as follows:

1.   The defendants' motions to dismiss and alternative motions for summary judgment (Docs. # 15, # 16) are **DENIED** at this time without prejudice to reconsideration.

2.   The defendants shall file properly supported supplemental motions for summary judgment on the issue of exhaustion within thirty days of the date of this order or advise in writing why they are unable to do so.  The plaintiff may file a response to any supplemental motion filed by the defendants within thirty days from the date shown on the defendants' certificate of service.

3.   The plaintiff's pending motion for appointment of counsel and his request for reconsideration of a previous motion for counsel (Docs. # 13, # 17) are **DENIED** at this time without prejudice to reconsideration by the Court on its own motion if necessary.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on <u>March 5</u>, 2007.


Nancy F. Atlas
United States District Judge